Vïrgil F. COLLEY and Helen M. Colley, Appellants,

v.

David P. TIPTON d/b/a Smithville Real Estate and Bill F. Roberts, Respondents.

No. WD 34016.

Missouri Court of Appeals,
Western District.

July 5, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied
Aug. 30, 1983.

Application to Transfer Denied
Oct. 18, 1983.

David K. Holdsworth, Krebbs, Holdsworth & Harman, Liberty, for appellants.

Eugene J. Feldhausen, Donald W. Petty, Feldhausen & Burke, P.C., Kansas City, for respondents.

Before SOMERVILLE, C.J., and TURNAGE and MANFORD, JJ.

TURNAGE, Judge.

Virgil Colley and his wife, Helen Colley, brought suit against David Tipton and Bill Roberts for negligence in the drafting of a real estate contract. The jury returned a verdict in favor of the Colleys and against both Tipton and Roberts in the amount of $23,935.80. On the motion of Tipton and Roberts, the trial court granted them a new trial on the stated ground that the court erred in giving instructions 6 and 10, the verdict directing instructions. The Colleys have appealed. Reversed and remanded

with directions to enter judgment on the jury's verdict.

The Colleys owned a farm in Clinton County, Missouri, which they had listed for sale with David Tipton, a real estate broker in Smithville, Missouri. Bill Roberts was a salesman working for Tipton. The listing which Tipton had on the Colley farm provided that there would be 8% interest on any balance of the purchase price which the Colleys would carry. In May of 1979, Roberts was contacted by Steve Maples and his wife, Nancy, who said that they wanted to make an offer on the Colley farm. Tipton and Roberts took a typewriter and a contract for deed form to the Maples' home. They discussed the terms of the Maples' offer and requested that Nancy type the contract. The contract provided that the sales price was to be $171,000, with $10,000 to be paid at the signing of the contract and $4,500 to be paid on December 31, 1979. The contract continued with the following provision, which is at the heart of the dispute in this lawsuit:

> Thirty Five Thousand due and payable September 1, 1980. The balance to be carried by seller for a period of 20 years at 8% intrest (sic). Prepayment after five years at no peantly (sic). First payment to be made annaualy (sic) on December 31, 1981. Sellers will provide warranty deed on payment of the thirty five thousand dollars on September 1, 1980. Buyers will sign deed of trust for balance. Possession June 1, 1979.

After the contract was typed, the Maples signed it and Tipton and Roberts took it to the Colleys at their home in Plattsburg. When they arrived at the Colley's home, Mrs. Colley told them that Mr. Colley was at the farm. Tipton and Roberts drove out to the farm, found Mr. Colley, informed him that they had sold his farm, and requested that he return to his home so that they could meet with him and Mrs. Colley together and get the contract signed.

There was a dispute in the testimony at this point. Mr. Colley said that he had told Tipton and Roberts that he wanted to go by the bank in Plattsburg and have the banker look over the contract because he still owed the bank on the farm. Tipton and Roberts denied that Mr. Colley had requested to go by the bank, and stated that Mr. Colley had only said that he owed a balance and wondered if he could sell the farm, and they had assured him that he could.

In any event, the three did not go by the bank, but instead went directly from the farm to the Colley home. The Colleys testified that they were given the contract, but that they did not read it because Mr. Colley did not have his glasses, and because they believed that they would probably not understand it anyway. Tipton testified that the Colleys looked at the contract, and Roberts testified that Mr. Colley read the contract and afterwards asked Roberts what it said. Roberts testified that he went over the entire contract in detail with Mr. Colley, and explained that the Maples had sold a house and only had $10,000 to pay at that time, but that they were willing to pay $4,500 on December 31 of that year and $35,000 on September 1, 1980. Roberts said that nothing was said about interest from June 1, 1979, to September 1, 1980, on the balance due after the $10,000 downpayment.

After conferring with Tipton and Roberts for about thirty minutes, the Colleys signed the contract. The parties discussed the 6% real estate commission, and although the commission came to a little over $10,000, the parties agreed to round it off to $10,000, and that Tipton and Roberts would keep the downpayment as their commission.

Sometime after the contract had been signed, Mrs. Colley called Roberts and inquired whether they would receive interest on all of their money from June 1, 1979, the date that the Maples took possession. Roberts replied: "Whoever loaned money and didn't pay interest on it?" Mrs. Colley testified that Roberts convinced her they would receive interest and that she didn't think about it anymore until the end of the year.

The Maples later took the position that the contract did not require them to pay interest between the date of possession on

June 1, 1979, and September 1, 1980, when the $35,000 payment was due, and that the interest started on September 1, 1980, after the $35,000 payment had been made. Tipton testified that he had his attorney, Thomas Stahl, write the Maples a letter in response to their argument on this point. In this letter, which was introduced into evidence, Stahl informed the Maples that his client, Tipton, took the position that the 8% interest was payable on the total balance from June 1, 1979.

As a result of this dispute, the Colleys filed a suit against Tipton and Roberts in April of 1981. They alleged that Tipton and Roberts had breached their duties to the Colleys by carelessly, negligently, and unskillfully drafting the contract such that it deprived the Colleys of $15,859.99, which represented interest on the unpaid balance between June 1, 1979, and September 1, 1980. The jury found for the Colleys, and awarded them $23,935.80 in damages.

■ Tipton and Roberts seek to uphold the order granting them a new trial on the ground that it was error to give the verdict directing instructions, because such instructions required the jury to find that they knew that the Colleys had signed the contract for deed believing they would receive 8% interest on all unpaid amounts from June 1, 1979, to September 1, 1980. Tipton and Roberts contend there was no evidence to show that they knew that the Colleys believed they would receive interest for the specified period.

Contrary to this contention, the record is replete with evidence that Tipton and Roberts knew that the Colleys expected to receive interest on the entire unpaid balance. Roberts himself testified that he knew from the listing that the Colleys wanted 8% on the unpaid balance for the sale of their farm. The listing agreement was in evidence and indeed carried the notation that the interest was 8%.

Mr. Colley testified that he made it clear to Tipton and Roberts before the contract was signed that he wanted 8% interest on all money he was loaning. Mr. Colley further testified that before the contract was signed, Roberts had visited them and urged them to reduce their asking price from $800 per acre to $750 per acre, and that he made a number of calculations to demonstrate to them that they could sell the farm for $750 an acre, carry the balance at 8%, and make a better return than they could by actually farming the land.

In addition, the letter from Tipton's attorney to the Maples made it clear that after the contract was signed, Tipton took the position that the contract required the Maples to pay interest on the entire unpaid balance, and not just on the balance that remained due after September 1, 1980.

The above evidence demonstrates that there is no dispute in the record that the Colleys desired and expected to receive 8% interest on the entire unpaid balance resulting from the sale of the farm, and that Tipton and Roberts knew this. Tipton and Roberts' position at trial was not that they did not know that the Colleys expected to receive interest · on the entire unpaid balance, but rather that they had simply taken an offer from the Maples which did not include interest on the unpaid balance between June 1, 1979, and September 1, 1980. Their position was that when the Colleys accepted the offer, the question of interest was settled.

■ Tipton and Roberts made no other complaint about these verdict directing instructions in their motion for new trial. Since the trial court did not grant a new trial until more than 30 days after the entry of judgment, the court's jurisdiction to grant relief was limited to the reasons stated in Tipton and Roberts' motion for new trial. *Stretch v. State Farm Mutual Automobile Insurance Co.,* 645 S.W.2d 729, 732[1] (Mo.App.1983). The trial court erred in granting a new trial on the ground that the verdict directors were not supported by the evidence.

■ On this appeal, Tipton and Roberts are not confined to the reason given by the court in sustaining the motion for new trial, but may show that there are other grounds contained in the motion upon which the

motion should have been sustained. *Overton v. Tesson*, 355 S.W.2d 909, 913[5] (Mo. 1962).

Tipton and Roberts urge that a number of other grounds support the granting of a new trial. The first of these is that the court erred in refusing to withdraw the evidence concerning the real estate commission. That instruction, as offered, read, "[t]he issue of any real estate commission which plaintiffs may have incurred is withdrawn from the case and you are not to consider such evidence in arriving at your verdict." The motion alleged that the court erred in refusing this instruction, claiming that because this was a negligence case, the plaintiffs were entitled to the damages which flowed from the occurrence, and that "[t]he retrospective recovery of the real estate commission is not an element of such damage."

■ The evidence as to the payment of the real estate commission was admitted without any objection and was fully discussed by both sides during the trial. "When evidence whose nature is patent has been received without objection at the time, it cannot be successfully complained of, for the first time, by an instruction." *B.F. Coombs and Bro. Commission Co. v. Block*, 130 Mo. 668, 32 S.W. 1139, 1143[11] (1895). In *Coombs*, as here, evidence was received without objection and a withdrawal instruction was offered at the close of the case to withdraw the evidence from the jury's consideration. The *Coombs* court held that objection to evidence cannot be made for the first time by offering a withdrawal instruction. For that reason, the court correctly failed to grant a new trial for its refusal to give the withdrawal instruction.

■ Tipton and Roberts next contend that they were entitled to judgment on their motion at the close of all the evidence because the evidence, specifically the Colleys' testimony, showed that the Colleys were guilty of contributory negligence as a matter of law. Tipton and Roberts point to the Colleys' testimony that they did not read the contract before they signed it, evidence which they claim in the new trial

motion to be uncontroverted. However, as stated above, Tipton and Roberts' own testimony countered Colleys' evidence. Thus, the issue of contributory negligence involved a question of fact, and when it was submitted to the jury, the jury obviously chose to believe that the Colleys were not guilty of contributory negligence. Because there is no ground on which to hold that the Colleys were contributorily negligent as a matter of law for failure to read the contract before signing it, Tipton and Roberts were not entitled to a judgment on this ground.

■ Tipton and Roberts next contend that the court should have sustained the motion on the ground that the court allowed Colleys' counsel to persist in interrogating Roberts, over repeated objections, concerning the letter written by attorney Stahl. The short answer to this contention is that the court sustained every objection made to this line of questioning. In fact, when the questioning of Roberts on this subject began and the first objections were sustained, the court admonished Colleys' counsel not to pursue that line of questioning and counsel promptly complied. Thus, the court granted all the relief sought and correctly refused to grant a new trial on that ground.

■ Tipton and Roberts next contend that the court should have sustained their motion on the ground that it had refused to give a withdrawal instruction, which would have withdrawn evidence of attorney fees which the Colleys said they had incurred after the contract was signed, to resolve the interest question with the Maples. The motion alleged that the Colleys failed to produce any statements for such fee or to prove that the fee was reasonable. This evidence was admitted without objection. Mr. Colley stated that he had paid an attorney the amount of $1,050 to reach an agreement with the Maples on the interest question. Absent any objection, this evidence was not the proper subject of a withdrawal instruction. *Coombs*, 32 S.W. at 1143[11].

Tipton and Roberts further contend that the court erred in admitting Exhibit 2, the letter from attorney Stahl to the Maples, and that it should have given a withdrawal instruction concerning that exhibit. The motion for new trial alleges that the letter was erroneously admitted because it had not been produced by the Colleys in response to a discovery request. However, when the letter was offered at trial, no such objection was made. The objection at that time was that the letter contained the attorney's language rather than what Tipton himself had said. A motion for new trial may not be utilized to raise an objection that should have been made during trial. *Nelson v. Perky Bros. Transfer and Storage Co.*, 151 S.W.2d 476, 477[5] (Mo.App.1941). Thus, the court did not err in refusing a new trial on this ground.

Tipton and Roberts finally contend that the trial court granted the motion because it recognized that the verdict was against the weight of the evidence, and that the granting of a new trial may be sustained on that ground. When the trial court grants a new trial on a specific ground, that ruling constitutes a denial of all other grounds asserted in the motion, and it is never presumed that a new trial was granted on discretionary grounds. *Randolph v. USF & G Companies*, 626 S.W.2d 418, 422[11] (Mo.App.1981), Rule 84.-05(c). The court did not grant a new trial on that ground and this court therefore cannot presume that the trial court found the verdict to be against the weight of the evidence.

The judgment granting a new trial is reversed and this cause is remanded with instructions to reinstate the judgment based upon the jury's verdict.

All concur.