**SIMUL VISION CABLE SYSTEMS PARTNERSHIP, Respondent,**

v.

**CONTINENTAL CABLEVISION OF ST. LOUIS COUNTY, INC., Appellant.**

No. 73959.

Missouri Court of Appeals, Eastern District, Division One.

Jan. 5, 1999.

Bryon E. Francis, St. Louis, for appellant.

Kevin A. Suffern, St. Charles, for respondent.

CRANDALL, Judge.

Defendant, Continental Cablevision of St. Louis County, Inc., appeals from the grant of summary judgment in favor of plaintiff, Simul Vision Cable Systems Partnership, in an action for conversion. We affirm.

On June 18, 1987, plaintiff, Simul Vision Cable Systems Partnership (hereinafter Simul Vision), entered into an "Agreement to Purchase Assets" (hereinafter agreement) with defendant, Continental Cablevision of St. Louis County, Inc. (hereinafter Continental). The agreement provided for the transfer of Simul Vision's "right, title and interest in ... all real and personal, tangible and intangible, assets of [Simul Vision] used or useful in or related to the ownership or operation of the cable television systems (the 'Systems') serving Lake Saint Louis, Missouri...."

Schedule 1(a) of the agreement described the specific television transmission assets to be transferred. An initial draft of Schedule 1(a), dated March 31, 1987, specifically included "O'Fallon Hills, St. Charles County, 4.2 miles above-ground strand only" (hereinafter O'Fallon Strand) as an asset to be transferred. The final draft of Schedule 1(a), dated June 16, 1987, however, did not list the O'Fallon Strand in those assets.

In June 1992, Simul Vision brought an action against Continental, alleging that Continental had converted the O'Fallon Strand by using it to provide cable television service to the O'Fallon Hills Subdivision. Continental answered that there could be no conversion because the O'Fallon Strand was one of the assets it purchased from Simul Vision under the agreement.

Both parties filed motions for partial summary judgment on the issue of liability for conversion. After a hearing on the motions, the trial court entered partial summary judgment in favor of Simul Vision, finding that Continental was liable to Simul Vision for converting the O'Fallon Strand. After a jury trial on the issue of damages, the jury awarded damages against Continental in the amount of $151,000.00. The trial court entered judgment in accordance with that verdict.

Initially, we review the standard of review of a summary judgment. The propriety of summary judgment is purely an issue of law. *ITT Commercial Finance Corp. v.*

*Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). Accordingly, the standard of review on appeal regarding summary judgment is no different from that which should be employed by the trial court to determine the propriety of sustaining the motion initially. *Id.* Summary judgment is designed to permit the trial court to enter judgment, without delay, where the moving party has demonstrated a right to judgment as a matter of law. *Id.* Summary judgment is particularly appropriate if the issue to be resolved is the construction of a contract that is unambiguous on its face. *Daniels Exp. and Transfer Co. v. GMI Corp.,* 897 S.W.2d 90, 91–92 (Mo.App. E.D. 1995).

█ In its first point, Continental contends the trial court erred in granting partial summary judgment in favor of Simul Vision on the issue of liability for conversion. It argues that at the very least, there was an issue of material fact as to whether the O'Fallon Strand was included in the assets to be transferred pursuant to the agreement, such that Continental had the right to possess it.

█ Conversion is the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights. *Kennedy v. Fournie,* 898 S.W.2d 672, 678 (Mo.App. E.D.1995). Conversion may be proved by establishing one of the following three: (1) a tortious taking; (2) a use or appropriation by the defendant indicating a claim or right in opposition to the owner; and (3) a refusal to give up possession on demand. *Id.* Under any theory, Simul Vision must show that it had title to, or a right to possession of, the property. *See id.*

Here, Simul Vision established that it owned the O'Fallon Strand by submitting as an exhibit an invoice showing that it had purchased the O'Fallon Strand. The fact that Continental used or appropriated the O'Fallon Strand was established by the affidavit of Continental's senior vice president, stating that after entering into the agreement Continental "proceeded to attach coaxial cable to the O'Fallon Strand to provide cable television service to the O'Fallon Hills

Subdivision." This use of the O'Fallon Strand was in opposition to Simul Vision's rights because Continental had no rights under the express terms of the agreement to appropriate the O'Fallon Strand. The agreement clearly provided for the sale of Simul Vision's assets related to the ownership or operation of the cable television system serving Lake Saint Louis only, not the system serving the O'Fallon Hills Subdivision. In addition, the initial draft of Schedule 1(a) included the strand serving the O'Fallon Hills Subdivision as an asset to be transferred, whereas the final draft of that schedule did not.

█ Continental argues the parol evidence rule bars the admission of the draft of Schedule 1(a). Parol evidence may not be used to create ambiguity in an otherwise unambiguous contract or to show that an obligation is other than that expressed in the written instrument. *Craig v. Jo B. Gardner, Inc.,* 586 S.W.2d 316, 325 (Mo. banc 1979). While collateral facts and circumstances may be introduced to ascertain the subject matter of a contract and to aid in interpreting it, such facts cannot cause the court to read into the contract something which it does not say. *Id.*

In the instant action, the draft of Schedule 1(a) was not introduced to vary or contradict the express terms of the agreement. It was offered to show that the agreement clearly transferred only the assets related to the cable television operation serving Lake St. Louis. By establishing that any reference to the O'Fallon Strand was deleted from the final Schedule 1(a), it could be inferred the O'Fallon Strand was not included in the assets to be transferred under the terms of the agreement. Accordingly, the trial court's admission into evidence of the draft of Schedule 1(a) did not violate the parol evidence rule.

█ In its second point, Continental again challenges the trial court's grant of partial summary judgment in favor of Simul Vision on the issue of liability for conversion. It alleges that summary judgment was inappropriate because the agreement was ambiguous and there remained material issues of fact. Continental argues as follows: (1) the

trial court, by considering parol evidence, made an implicit finding that the agreement was ambiguous; and (2) there were material issues of fact because the transfer of the O'Fallon Strand could be implied from the transfers of the St. Charles County franchises and of the Union Electric pole license agreements and pole attachment permits.

To give construction to an ambiguous contract that reflects the intent of the parties, the court can consider extrinsic or parol evidence, including the execution of the contract and the interpretation given to the contract by the parties. *Wynn v. Wynn*, 738 S.W.2d 915, 918 (Mo.App.1987). Where the contract is not ambiguous, however, the intent of the parties is determined from the contract alone. *Morgan v. City of Rolla*, 947 S.W.2d 837, 841 (Mo.App. S.D.1997). Whether a contract is ambiguous is a question of law. *Young Dental Mfg. Co. v. Engineered Products, Inc.*, 838 S.W.2d 154, 155–156 (Mo. App. E.D.1992).

In the instant action, the agreement clearly provided for the transfer of the Lake St. Louis cable television service only. The fact that the parties disagreed as to the meaning of the terms of the agreement did not render the agreement ambiguous. *Id.* As stated above, parol evidence in the form of the draft of Schedule 1(a) did not vary or contradict the terms of the unambiguous agreement, because the O'Fallon Strand was not included in the final schedule to the agreement. Thus, there was no implicit finding by the trial court that the agreement was ambiguous.

In addition, Continental's argument that the transfer of the O'Fallon Strand can be implied from the transfer of other assets related to the O'Fallon Strand is also without merit. The evidence was that the St. Charles franchise and the pole licenses and permits were non-exclusive and could be secured by any entity upon proper application. Also, the agreement expressly stated that the assets transferred were those serving Lake

St. Louis. There can be no implied transfer of assets not included specifically in the agreement.

The trial court properly granted partial summary judgment in favor of Simul Vision on the issue of liability for conversion. Continental's first and second points are denied.

In its third point, Continental contends the trial court improperly denied its motion to reconsider the grant of partial summary judgment in favor of Simul Vision on the issue of liability for conversion.[1] It argues that "newly discovered material and disputed facts were introduced" which rendered the partial summary judgment improper.

The "newly discovered" material was the deposition testimony of Simul Vision's counsel who negotiated the agreement and who prepared the initial draft of Schedule 1(a) which included the O'Fallon Strand as an asset to be transferred. Continental alleged that the attorney's testimony raised an issue as to whether Simul Vision owned the O'Fallon Strand, an essential element in its conversion action. The pertinent part of the attorney's testimony read as follows:

A. ...After he had an opportunity to review that schedule [ (1a) ], he [Simul Vision's managing partner] told me that it was wrong to have the O'Fallon strand on that schedule.

\* \* \*

Q. ...[D]o you recall at all why you did not include the O'Fallon strand in the excluded assets?

A. My memory with respect to this, it is not precise. I think that I was informed that the strand was not owned by Simul Vision. I'm uncertain of that, but that's my best recollection.

The trial court did not err in refusing to set aside the partial summary judgment in favor of Simul Vision. The attorney's testi-

---

1. Continental also attempts to appeal from the trial court's denial of its motion for summary judgment. The denial of a motion for summary judgment does not present an appealable issue. *Jackson v. Jackson*, 970 S.W.2d 391 (Mo.App. S.D.1998). In addition, in view of our holding that summary judgment was properly granted in favor of Simul Vision, Continental's allegation of error is without merit.

mony was equivocal and did not clearly establish that Simul Vision did not own the O'Fallon Strand. As such, the testimony did not create a material issue of fact with regard to ownership of the O'Fallon Strand. Continental's third point is denied.

■ In its fourth point, Continental asserts the trial court erred in allowing Simul Vision's expert to testify regarding the value of the O'Fallon Strand, because the testimony was based on the preemptive position of the strand on the electric company's poles, a subject upon which the expert was not competent to testify.

Contrary to Continental's assertion, the expert's testimony regarding the fair market value of the O'Fallon Strand was not based exclusively on the preemptive position of the strand. Rather, the expert also based his valuation of the strand on what he described as a "per subscriber unit cost." The expert gave a detailed analysis of the value of the O'Fallon Strand using the per subscriber unit method of calculation. Continental did not object to this testimony; and thus waived any claim of error with regard to the method of valuation employed by the expert. *See Colley v. Tipton*, 657 S.W.2d 268, 272 (Mo. App.1983). Continental's fourth point is denied.

■ In its final point, Continental charges error in the trial court's denying its motions for new trial and for remittitur because the jury's verdict was not supported by substantial evidence and was excessive.

The decision whether to grant a new trial based on the size of the jury's award rests with the trial court. *Heins Implement Co. v. Missouri Highway & Transp. Comm'n.*, 859 S.W.2d 681, 692 (Mo. banc 1993). Appellate courts defer to the trial court's ability to judge the credibility of the witnesses and to assess the impact of alleged trial errors upon the jury. *Id.* The appellate court is limited to inquiring whether the jury's verdict is supported by substantial evidence or, stated another way, whether the amount of the verdict is responsive to the evidence on the issue of damages. *Id.* The opinion of a single, qualified witness constitutes substantial evidence. *Id.*

Here, Simul Vision's expert as well as Simul Vision's managing partner testified that the value of the O'Fallon Strand was $302,-000.00. Continental's expert witness testified that the value of the O'Fallon Strand was $16,000.00. Thus, the jury's verdict of $151,000.00 fell within the range of values offered into evidence. There was substantial evidence to support the verdict. The trial court did not err in refusing to grant a new trial.

■ As to the motion for remittitur, the trial court has broad discretion regarding whether to order remittitur. *Cole v. Goodyear Tire & Rubber Co.*, 967 S.W.2d 176, 187 (Mo.App. E.D.1998). The appellate court will interfere with a judgment with caution and only when the verdict is so grossly excessive that it shocks the conscience of the appellate court and convinces the appellate court the jury and trial court abused their discretion. *Id.* Given the fact that the damage award fell within the parameters of the evidence, it was not so grossly excessive that it shocks our conscience. The trial court did not abuse it discretion in refusing to order remittitur. Continental's fifth point is denied.

The judgment of the trial court is affirmed.

JAMES A. PUDLOWSKI, P.J., and CLIFFORD H. AHRENS, J., concur.