**BOATMEN'S TRUST COMPANY, et al., Appellant,**

v.

**Janet S. LONG, et al., Respondent.**

**No. ED 76078.**

Missouri Court of Appeals, Eastern District, Division One.

Feb. 22, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 27, 2000.

Application for Transfer Denied May 30, 2000.

Frank Susman, Susman, Schermer, Rimmel & Shifrin, L.L.C., St. Louis, for appellant.

W. Stanley Walch, Mike W. Bartolacci, Thompson Coburn LLP, St. Louis, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellants[1], Nancy H. Gillespie and Gregory D. Hartley, ("appellants"), appeal

the judgment of the Circuit Court of the City of St. Louis, granting motion for summary judgment in favor of respondents, Janet S. Long, Frank B. Long, III, George S. Long, Christopher P. Long, and Anthony D. Long, ("respondents"). We affirm.

Respondent, Janet S. Long, ("wife"), was the first wife of decedent, Frank B. Long, Jr., ("husband"). Wife and husband were married on November 8, 1948. They had four children, respondents, Frank B. Long, III, George S. Long, Christopher P. Long, and Anthony D. Long.

The parties separated on June 29, 1969, after wife learned that husband was having an extramarital affair with Mary Hartley, whom husband later married in 1971. On August 8, 1969, wife filed a petition for separate maintenance from husband. An order granting wife separate maintenance pendente lite was entered on September 15, 1970, with modifications remaining in effect until final judgment was entered. On May 15, 1971, wife and husband entered into a separation agreement, which partially provided:

*Section 6. Will and Testamentary Disposition of Husband*

Husband agrees that, subject to any subsequent marital rights, the assets of his estate shall be equally divided among the aforesaid four children of the parties who shall survive him. To this end, husband will keep in effect at all times a will which provides that all the assets of his estate are to be divided equally among aforesaid children. Husband agrees not to dispose of his estate in any other manner prior to his death except by inter vivos gifts or other appropriate means to said four children. The definition of "estate" as used in this Section 6 shall mean the same as that for "gross estate" as used for federal estate tax

---

1. Boatmen's Trust Company was joined as a nominal party in its dual capacities as the successor trustee of husband's revocable trust and as a personal representative of Frank's probate estate.

purpose in Section 2031–2044 Internal Revenue Code of 1954 as amended.

As part of the separation agreement, wife also agreed to amend her petition to seek dissolution of her marriage from husband. The parties also stipulated that the separation agreement may be introduced as evidence in the divorce proceeding. The stipulation further provided:

> In the event a decree of divorce is granted plaintiff, this Agreement may be referred to in such decree, and any such decree may incorporate such provisions of such Agreement as the Court has power to include in a decree of divorce, and such provisions shall be merged in the decree and become a part thereof, and that the attached form of decree is agreeable to the parties herein in the event a divorce is granted to the plaintiff.

The separation agreement was admitted into evidence during the divorce proceeding. The divorce decree entered by the trial court on August 6, 1971, referenced it only as to the payments for maintenance and child support. The divorce decree did not reference husband's promise to leave his estate to his four children.

On October 15, 1971, husband married Mary Hartley, ("Mary"). At that time, Mary had two children, the appellants. Mary died on December 8, 1995. On February 12, 1996, husband executed a trust. In his trust, husband disinherited his four natural children.

> *4. Disinheriting Children.* Grantor (husband) currently has four children, namely: FRANK B. LONG III, GEORGE S. LONG, CHRISTOPHER P. LONG and ANTHONY D. LONG. Grantor intends to leave these children nothing under this trust. Wherever it shall read "children," "descendants" or "heirs" in this trust, it shall exclude these children and their descendants.

Husband also executed a will dated February 12, 1996. In his will, husband devised and bequeathed his entire probate estate to the trust. Husband also disinherited his four natural children in the will. Appellants are named the beneficiaries of the trust upon husband's death. Husband did not reference the separation agreement either in his trust or in his will.

On February 18, 1996, husband died. At that time the value of the assets in his trust and probate estate as reported on his Federal Estate Tax return was $898,-658.17. Husband's individual retirement account, ("IRA"), accounted for approximately 42% of this amount. Husband worked for OB–GYN Associates as a physician. When husband retired in 1985, he transferred the funds he had accumulated during his working years in the OB–GYN Associates profit sharing plan to an IRA.

After husband's death, respondents found out that husband had reneged on his promise in the separation agreement. On June 17, 1996, respondents filed a four-count petition in equity. Count I pleaded specific performance combined with either reformation of the trust agreement or imposition of a constructive trust. Count II pleaded a breach of contract based on husband's failure to make a will in accord with the separation agreement. Count III pleaded an alternative breach of contract theory. Count IV pleaded an action based on fraudulent transfer premised on the language of the separation agreement. On July 10, 1996, appellants filed their answer, affirmative defenses and cross-claim. In their cross-claim against Boatmen's Trust Company, appellants allege a claim of fraudulent misrepresentation. Both respondents and appellants filed motions for summary judgment. The trial court sustained respondents' motion for summary judgment as to count I of their petition, and dismissed counts II, III, and IV without prejudice. The trial court denied appellant's motion for summary judgment and cross-claim against Boatmen's Trust Company. Appellants appeal.

▪ Appellate review of motion for summary judgment is essentially de novo.

*ITT Commercial Finance v. Mid–Am. Marine,* 854 S.W.2d 371, 376 (Mo.banc 1993). Appellate courts review the record in the light most favorable to the party against whom judgment was entered. *Id.* "Summary judgment is particularly appropriate if the issue to be resolved is the construction of a contract that is unambiguous on its face." *Simul Vision Cable v. Continental Cablevision,* 983 S.W.2d 600, 603 (Mo.App. E.D.1999).

Appellants raise two points on appeal. Appellants argue the trial court erred when it granted respondents' motion for summary judgment, because: (1) husband's IRA was not included within the term "estate" as defined in the separation agreement; and (2) the separation agreement was merged into the divorce decree by the parties' stipulation of facts and pleadings, and it is unenforceable as a judgment, since it was never revived pursuant to section 516.350, RSMo 1994.

In their first point, appellants argue that husband's IRA is not included within the term "estate" as defined in the agreement because all IRAs were non-existent in 1971. They further argue that husband's retirement plan (the precursor to his IRA) and all forms of retirement plans were expressly excluded from the term gross estate as defined in sections 2031–2044 of the 1954 Internal Revenue Code. We disagree.

The court determines the intent of the parties from the contract alone, where the contract is not ambiguous. *Simul Vision Cable,* 983 S.W.2d at 604 "Whether a contract is ambiguous is a question of law." *Id.* In section 6 of the separation agreement, husband promised to leave his estate at his death to his four natural children. The agreement further provided that "the definition of 'estate' as used in this section 6 shall mean the same as that for 'gross estate' as used for Federal estate tax purposes in section 2031–

2044 Internal Revenue Code of 1954 as amended."

The language used is plain and unambiguous and we infer the parties' intention from the contract alone. The Internal Revenue Code of 1954 was the current code when the parties entered into the agreement. The parties contemplated the possibility of amendments to the code prior to the completion of the agreement by adding the words "as amended." In light of this fact, the parties indicated their intention to use the current amendment when the final contemplated contingent event (i.e., transfer of husband's estate to his four children after his death) happened. The parties agreed that husband would will his estate, at his death, to his four natural children. Husband agreed not to transfer his assets out of his name from the time the agreement was entered into until his death. The words "as amended" were added by the parties to guarantee that husband's estate, would be determined by the definition of "gross estate" at the time of his death.

Husband's IRA was established after his retirement in 1985. In 1971, husband did not own an IRA as it was not possible because the Federal tax law had not yet created such accounts.[2] The funds that husband used to fund his IRA after his retirement, already existed in the form of assets comprising his funds in the OB–GYN Associates' profitsharing plan. When husband retired in 1985, OB–GYN Associates distributed the full proceeds of his profit-sharing account to him, and he rolled these assets over into an IRA in his name, with the Van Kampen American Capital U.S. Government Fund A.

When husband died in February 1996, included among his assets was the IRA, which at that time, by definition of gross estate, included IRA's. 26 U.S.C. sections 2031, 2033, and 2039. Additionally, husband's IRA was reported on his

---

**2.** IRA was created in 1974. 26 U.S.C. section 408(a) added by title II, section 2002(b) of

Pub.L. 93–406, September 2, 1974; effective December 31, 1974.

Federal estate tax return and included as part of his gross estate for federal estate tax purposes. We find husband's IRA was part of his gross estate when he died. Thus, husband's IRA is included in the term "estate" as used in the separation agreement.

In their second point, appellants argue that the separation agreement was merged into husband and wife's decree of divorce by the parties' stipulation of facts and pleadings. Therefore, appellants argue that the separation agreement was unenforceable as a judgment because it was never revived pursuant to section 516.350. We disagree.

■ Section 452.325 allows the courts to enter judgments ordering parties in dissolution proceedings to comply with the terms of their separation agreements. Section 452.325 was enacted in 1973, effective January 1, 1974. Prior to the effective date, rights that could only be created by separation agreements remained contractual, even if incorporated into a divorce decree. *Nelson v. Nelson,* 516 S.W.2d 574, 578 (Mo.App.1974). Divorce laws in existence prior to the enactment of the 1973 Dissolution of Marriage Act are decisive in divorce judgments obtained prior to the effective date of January 1, 1974. *Humphrey v. Humphrey,* 597 S.W.2d 673, 674 n. 1 (Mo.App.W.D.1980). "Prior to the enactment of the Dissolution of Marriage Act, a separation agreement ... was enforceable only in a separate action under traditional contractual remedies." *Lay v. Lay,* 912 S.W.2d 466, 467 (Mo.banc 1995).

■ In the case at bar, wife and husband divorced in 1971. They drafted and presented the trial court a separation agreement. The trial court in its divorce decree referenced the separation agreement only as to certain payments. It did not reference the provisions of section 6 of the separation agreement. The 1973 Dissolution of Marriage Act does not apply to divorce decree entered in 1971. The law that existed at that time allows parties to bring separation agreement actions in contract, rather than to enforce them as judgments. Thus, appellants' allegation regarding whether the parties stipulated and pleaded that the separation agreement was part of the divorce decree is not legally relevant to the determination of this case. The trial court correctly concluded that section 6 of the separation agreement remained contractual in nature under the law as it existed in 1971. Therefore, we need not reach the issue of whether this action is barred by section 516.350 because the action here is in contract and not to enforce the divorce decree.

Based on the foregoing, the judgment of the trial court is affirmed.

PAUL J. SIMON, J., and JAMES R. DOWD, J., concur.