### DÉJÀ VU OF MISSOURI, INC., Appellant,

v.

### TALAYNA'S LACLEDE'S LANDING, INC., et al., Respondents.

#### No. ED 77671.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 12, 2000.

Goldberg, Katz & Stansen, P.C., Lawrence Goldberg, S. Francis Baldwin, St. Louis, for appellants.

Barry S. Ginsburg, Clayton, for respondents.

GARY M. GAERTNER, Sr., Presiding Judge.

Appellant, Déjà Vu of Missouri, Inc., ("appellant"), appeals from the judgment of the Circuit Court of the City of St. Louis granting a motion for summary judgment in favor of the respondents, Talayna's Laclede's Landing, Inc. and Michael P. Faille, (collectively, "respondents"). We affirm.

Appellant operated numerous nightclubs around the nation exhibiting nude and semi-nude exotic dancing. In 1990, appellant came to St. Louis to scout for a location for a nightclub, believing St. Louis had a promising market for this type of entertainment. At this time, respondents owned and operated a nightclub and restaurant on Laclede's Landing, which was operating at a significant loss. The appellant was introduced by his real estate agent to respondents. Almost immediately, negotiations between the parties began. In his deposition, Michael Faille testified that originally the negotiations contemplated a buy-out of Talayna's by appellant. These negotiations eventually led to the drafting of the "General Agreement."

On February 15, 1991, Lee Klein, attorney for appellant, provided his client with a written opinion of the proposed structure of the relationship as contained in the "General Agreement." In the opinion, Mr. Klein wrote, "I am generally uncomfortable with the structure of this transaction. It would appear that what is being set up is an intent to create a 'sham' situation to permit Déjà Vu to operate its business without either the necessity of obtaining formal approval of, or the transfer of applicable liquor licenses ..." This letter sent the parties back to the drafting board, where they eventually hammered out the "Consulting and Entertainment Agreement," ("the contract"), at issue in this case.

The contract provided appellant would engage in "consultation, entertainment and miscellaneous management" pursuant to appellant's "concept." This "concept" included managing adult restaurants, serving alcoholic beverages, featuring nude and/or semi-nude servers, and "burlesque entertainment" similar to other Déjà Vu establishments. In the contract, appellant was appointed sole and exclusive manager of the day-to-day operation of the said business. The duties set forth in the contract included: hiring personnel, employee apparel, purchasing of all inventory and equipment, sale and collection of all proceeds, and payment of all expenses incurred, including all taxes, insurance, salaries, rent, etc. In addition, the contract stated:

> [Appellant] shall not provide management in connection with, nor be the agent of [respondent] with respect to, the operation of the bar, the supplying or serving of any alcoholic beverages, or in connection with any liquor licenses which are to be secured and/or maintained by [respondents] ... it being expressly understood and agreed between the parties that, regardless of the fact that [appellant's] employees may actually handle and operate the purchasing, serving, selling and storage of some or all of the liquor upon the property ... [respondents] shall have exclusive right, authority and control over all liquor licenses.

The contract obligated respondents to maintain their liquor license and to use their best efforts to defend in any action if the license was revoked, denied, terminated, withdrawn, etc. Further, if the liquor license was ever revoked, etc., for any reason other than appellant's actions, that would have constituted a material breach of the contract; and appellant had the right to immediately terminate the agreement.

Appellant agreed to advance respondents $319,000 in anticipation of net profits from the business; $125,000 of which was

in the form of a promissory note. Appellant also paid for substantial improvements on the property. In addition, appellant had contracted for the option to purchase all the assets, stock, and the leasehold interest of the business. In the event the appellant chose to exercise any of these options, the principal amount of the promissory note would be reduced by $4,500 per option. The agreement provided respondents would receive no compensation unless the business' gross receipts exceeded three million dollars. In that case, respondents would receive five percent of the net profits.

A few months after the business reopened under appellant's management, the Excise Commissioner of the City of St. Louis and the Supervisor of Liquor Control of the State of Missouri brought charges against respondents. They alleged respondents had transferred ownership of their establishment to appellant and on occasion permitted lewd or indecent conduct to take place on the premises in violation of the laws of the State of Missouri and the rules and regulations of the city of St. Louis. Proceedings were never brought against respondents for these allegations because Mr. Faille voluntarily surrendered his liquor license at the said location to prevent the liquor licenses of his other business interests from being revoked. Without a liquor license, the nightclub was not viable and therefore, immediately ceased operations. Appellant then brought suit against respondents for breach of contract, fraud, negligent misrepresentation, unjust enrichment, and rescission.

Respondents moved for summary judgment arguing the contract was in violation of various state laws and local ordinances; and therefore, void as a matter of law. The trial court granted summary judgment in favor of the respondents without making any findings of facts or conclusions of law.[1]

Appellate review of a motion for summary judgment is essentially de novo. *ITT Commercial Finance v. Mid–Am. Marine,* 854 S.W.2d 371, 376 (Mo.Banc 1993). Appellate courts review the record in light most favorable to the party against whom judgment was entered. *Id.* Summary judgment "shall be entered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 74.04(c).

On appeal, appellant argues the trial court erred in sustaining the motion for summary judgment in favor of respondents. Appellant contends it presented sufficient evidence to support the legality of the contract and presented a genuine issue of material fact to overcome a motion for summary judgment.

The court will look to the contract alone to determine the intent of the parties. *Simul Vision Cable v. Continental Cablevision,* 983 S.W.2d 600, 604 (Mo. App. E.D.1999). However, if the contract is ambiguous, "the court can consider extrinsic or parol evidence, including the execution of the contract and the interpretation given to the contract by the parties." *Id.* at 604. A contract is ambiguous when there is duplicity, indistinctness, or uncertainty in the meaning of words used in the contract. *Krombach v. Mayflower Ins. Co., Ltd.,* 827 S.W.2d 208, 210 (Mo.banc 1992). "Whether a contract is ambiguous is a question of law." *Simul* 983 S.W.2d at 604.

The language used in the contract at issue in this case is ambiguous. In one instance the contract reads, "[Appellant] shall not provide management in connection with, nor be the agent of [respondent] with respect to, the operation of the bar, the supplying or serving of any alcoholic beverages ..." Within the same para-

---

1. Additional facts pertinent to address the is- sues may be added as necessary.

graph, the contract reads, "[Appellant's] employees may actually handle and operate the purchasing, serving, selling and storage of some or all of the liquor upon the property ..." Further, under the contract, appellant had assumed sole responsibility in managing the establishment, hiring personnel, purchasing of all inventory and equipment, sale and collection of all proceeds, etc. The language cited above, tells us the appellant was not to provide any management in connection with the bar, yet be the sole manager of the business, whose duties included the hiring of all personnel, including the personnel handling, selling, and purchasing bar inventory. To clarify this ambiguity, we will look to the negotiations surrounding the drafting of the contract.

■ Mr. Faille testified that originally the negotiations between the parties contemplated a buy-out of Talayna's by appellant. Appellant's attorney described the original agreement as a "sham," created "to permit Déjà Vu to operate its business without either the necessity of obtaining formal approval of, or the transfer of applicable liquor licenses ..." Larry Troesch, the president of Déjà Vu, in a deposition, made it clear that having a liquor license was essential to this transaction. In addition, he seemed to recall a problem switching the liquor license.

In interpreting the ambiguous language in the contract in context with the above testimony, it is clear the intent of the parties was for the respondents to completely transfer their remaining financial interest in a failing business to the appellant. And when faced with the obstacles Missouri laws place on obtaining and transferring liquor licenses, the parties attempted to disguise their arrangement as a management/consultation agreement for their mutual benefit. Additional provisions in the contract support this conclusion. The contract provided the appellant

would pay the respondent $319,000; $125,000 of which was in the form of a promissory note. Further, appellant had the option to purchase all the assets, stock, and the leasehold interest of the business. In the event the appellant chose to exercise any of these options, the principal amount of the $125,000 promissory note would be reduced by $4,500 per option. This meant if appellant chose to exercise any option, they would actually be paying respondents monies already owed.[2] The parties may have called the monies, "future profits," but in reality, the appellant had purchased the right to exclusively manage the operation and to own all assets, stock, and the remaining leasehold interest for $319,000. The only obligation respondents had under the contract was to maintain the liquor license; and if they failed to do so, appellant had the exclusive right to cancel the contract.

■ Missouri law makes it illegal to sell or offer for sale intoxicating liquor within the state without first obtaining a license. Section 311.180, RSMo 1986.[3] Further, a license is nontransferable or assignable, with limited exceptions. Section 311.250. St. Louis ordinance states: "No person ... may sell, lease, sub-lease, rent, hypothecate, convey, assign or otherwise transfer in any manner a financial interest ... in all, or in any part of his licensed premises ..." with limited exceptions. St. Louis Ord. No. 61289 sec. 14.06.160. In addition, "No person shall conduct or operate any business upon a licensed premises other than the person to whom the license for such premises has been issued." Section 14.06.340. Any agreement or bargain that is predicated on the violation of laws and regulations, which have as their purpose the protection of the safety and health of the public, is illegal and therefore unenforceable. *Rice v. James,* 844 S.W.2d 64, 69 (Mo.App. E.D.1992).

---

2. Appellant had exercised the option to purchase all the assets.

3. All statutory references are to RSMo 1986, unless otherwise indicated.

These liquor laws and regulations have as their purpose the protection of the safety and health of the public. The parties made a poor attempt to circumvent these laws and regulations by calling their contract a "Consulting and Entertainment Agreement," and using language that purported to maintain ultimate authority over the bar in the hands of respondents. By creating an ambiguous contract, these parties provided the court with an opportunity to look beyond this colorful language and see the transaction for what it was—a transfer of interest. This purpose is in clear violation of the liquor laws and regulations prohibiting such a transfer. The contract is void as a matter of law, and therefore, unenforceable both in law and equity. Although within the facts of this case this resolution appears to unfairly benefit one party and burden the other, when both are equally at fault; Missouri law has long held that parties who enter into an agreement, the purpose of which is illegal, should be left in the position in which they have placed themselves. *See, e.g., King v. Moorehead,* 495 S.W.2d 65, 77 (Mo.App.K.C.1973).

Based on the forgoing, summary judgment was proper. Judgment affirmed.

CRAHAN, J., and DRAPER, J., concur.