In the ESTATE OF Lorene CREECH, Deceased.

No. ED 82647.

Missouri Court of Appeals, Eastern District, Northern Division.

Nov. 4, 2003.

Walter D. McQuie, Jr., Montgomery City, MO, for appellant.

Jess L. Mueller, Troy, MO, Jane E. Tomich, St. Charles, MO, for respondents.

MARY R. RUSSELL, Judge.

Presbyterian Children's Services, residuary beneficiary of the Estate of Lorene Creech, appeals from the judgment entered by the Circuit Court of Lincoln County against the estate for $20,000, the value of a missing ring bequeathed under the will. Among its points on appeal, residuary beneficiary asserts that the court erred in finding that the value of the ring was $20,000, because the finding was not supported by substantial evidence. We agree and reverse.

Lorene Creech ("decedent") died July 31, 1999, leaving a will in which she be-

queathed all her personal jewelry[1] to her sister-in-law, Marjorie Creech, and her friend, Willalma Bishop ("legatee"), or the survivor of them.

Legatee had been a friend of decedent for over 70 years. Marjorie Creech is married to decedent's brother-in-law, Austin Creech ("Austin"), who was a co-personal representative of the estate, along with Ronald Cowan. Shortly after decedent's death, Austin requested leave to withdraw, and A. Carter Creech, his son, was appointed.

Decedent owned a solitaire diamond ring weighing between two and three carats that her father had given her. Legatee stated that decedent wore the ring at all times as long as she knew her. Through the duration of their friendship, which involved frequent discussions of jewelry, decedent promised to bequeath the ring to legatee when she died.

Decedent became ill in July 1999 and was taken to the hospital. When she was prepared for surgery, she gave her jewelry to Austin. Hospital staff provided him with an inventory form to document decedent's personal belongings. Her wedding set was the only jewelry reflected on the inventory. Austin, however, stated at trial that decedent had given him two rings, her wedding set and a cocktail ring with a cluster of diamonds, but not the diamond solitaire. Decedent died shortly thereafter.

The co-personal representatives filed an inventory with the court stating that the value of decedent's jewelry was $10.00, and did not specifically list the solitaire ring. Legatee filed a petition for discovery of assets under section 473.340 RSMo 2000,[2]

naming as defendants Austin individually, and in his capacity as former personal representative, and Cowan and A. Carter Creech as co-personal representatives. Defendants admitted in their answer to legatee's petition that Austin believed that decedent's wedding set and cocktail ring were gifted to him at the hospital, but that he did not know where the solitaire ring was located.

At trial, legatee offered her own testimony regarding the ring's description. She stated that the ring was either "white gold or platinum, probably platinum" and between two-and-a-half and three carats. She did not, however, testify regarding the clarity or color of the stone.

Legatee also presented the testimony of several witnesses. Cindy Ricks testified that she had known decedent for five years prior to her death, and that in each of their encounters, she noticed that decedent wore a large diamond solitaire ring. She offered no further description.

Betty Schieffer, decedent's tenant and caretaker, stated that decedent always wore a ring with one stone of "average" size that was a gift from decedent's father. Schieffer further stated that decedent was wearing the ring when she was transported to the hospital for the final time. Mary Dandridge, another of decedent's caretakers, testified that decedent wore a diamond ring her father gave her, but, like the other witnesses, was unable to testify regarding the specific characteristics of the ring.

As her final witness, legatee called Nicholas Poetz ("jeweler"), a jeweler in Troy, to testify regarding the value of the diamond

---

1. Paragraph One of decedent's will stated that, if decedent left a list disposing of tangible personal property pursuant to Section 474.333 RSMo Cum.Supp.1996, her property was to be disposed of as stated in the list. No such list was found.

2. All statutory references are to RSMo 2000 unless otherwise indicated.

solitaire ring. Jeweler testified that there are ranges of diamond clarity and color, and that the value of a particular diamond varies depending on where it falls on the scales of color and clarity. Jeweler did not address the extent to which the type of metal in which the diamond was set would affect its value.

The record indicates that, at some point after decedent's death, legatee contacted jeweler to obtain an estimate of the ring's value. Jeweler was never shown the ring, but legatee asked him to make a determination based upon the value of a round, two-carat diamond of "nice color, nice clarity." Jeweler, who stated that he generally deals in much smaller diamonds, consulted a professional list to provide legatee an estimate of $20,000.

The trial court found that the ring was property of the estate, however, it could not be located. It valued the missing ring at $20,000 and entered a judgment against the estate in favor of legatee and Marjorie Creech. Following the judgment, residuary beneficiary moved to intervene as an interested party. The trial court granted the motion. Residuary beneficiary moved to set aside the judgment, or, in the alternative, for a new trial. That motion was denied and this appeal follows.

Residuary beneficiary raises three points of error. It alleges: (1) that the pleadings were insufficient to support a judgment against the estate; (2) that there was insufficient evidence that the ring was in existence at the time of decedent's death and was in her possession at that time; and (3) that there was not sufficient evidence in the record to support the $20,000 judgment against the estate. We need not address the first and second points because the third point is dispositive.

Residuary beneficiary's third point states verbatim:

> The trial court erred in finding that the value of the ring was $20,000.00 because

the testimony of the only valuation witness, Poetz, was not based on facts within his personal knowledge and observations since he has never seen the ring; and no facts as to the size, cut, clarity[,] and color of the diamond in the ring were in evidence and put to him hypothetically.

We read this point to challenge the lack of substantial evidence to support the valuation of the ring.

■■■ Our review of a court-tried case is governed by *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We will affirm the action of the trial court unless it is not supported by the weight of the evidence, there is no substantial evidence to support it, or it erroneously declares or applies the law. *Ryan v. Spiegelhalter,* 64 S.W.3d 302, 305 (Mo. banc 2002). Similarly, petitions to discover assets are actions at law and must be supported by substantial evidence. *Estate of Gross v. Gross,* 840 S.W.2d 253, 257 (Mo.App.1992) (internal citations omitted). There is no specific remedy under section 473.340. Rather, the statute provides that:

> The court shall direct the delivery or transfer of the title or possession, or both, of said property to the person or persons entitled thereto.... [T]he court shall render a money judgment for the value thereof with interest thereon.... [T]he court may enter a judgment for all losses, expenses, and damages sustained....

Section 473.340.

■■ "Findings by a trial court as to damages recoverable are entitled to great weight on appeal and will not be disturbed unless it is shown that the damages awarded were clearly wrong, could not have been reasonably determined, or were excessive." *Brand v. Mathis & Assocs.,* 15 S.W.3d 403, 407 (Mo.App.2000) (quoting *Montrose Sav. Bank v. Landers,* 675 S.W.2d 668, 672 (Mo.App.1984)).

■ We recognize that actions for discovery of assets are analogous to common law actions for trover and conversion. *See In re Estate of Boatright,* 88 S.W.3d 500, 506 (Mo.App.2002). We, therefore, utilize the conversion measure of damages, fair market value, in order to determine damages for discovery of assets. *See Bell v. Lafont Auto Sales,* 85 S.W.3d 50, 54 (Mo.App.2002). " 'Fair market value' is defined as the price that property will bring when it is offered for sale by an owner who is willing[,] but under no compulsion to sell[,] and is bought by a buyer who is willing or desires to purchase[,] but is not compelled to do so." *Id.* (quoting *Coffman v. Powell,* 929 S.W.2d 309, 312 (Mo.App.1996)).

■ Review of the record finds scant evidence that the fair market value of the ring was $20,000. Legatee provided a brief description of the ring to jeweler. Jeweler stated on cross-examination that he was unable to assess the clarity of a diamond without an eye loop, the appropriate tool to ascertain diamond quality. He further stated that it would be unlikely that a layperson would be able to determine the color of clarity of a diamond. Legatee acknowledged that she was not an expert in appraising diamonds. She did not view the diamond through an eye loop, but had viewed the diamond with her naked eye while visiting decedent. Therefore, legatee could not possibly have determined whether the diamond was chipped, discolored, or otherwise flawed, and consequently, was unable to provide this information to jeweler for his consideration in estimating the ring's value.

Jeweler testified that he provided legatee with a replacement cost and that the value he gave legatee was not an appraisal. In his testimony, he stated that size, cut, color, and clarity, each factor into the value of a diamond. He indicated that diamonds range in color from D, being the most colorless, to Z, which are brown. Jeweler's replacement cost was based upon a "G" diamond, which is a nice color, and the color of the diamonds typically sold in his store. He did not, however, offer a range of value for a two-carat diamond of exceptional color or poor color. Jeweler also stated that there is a range of clarity from flawless to I–3, which means the diamond contains obvious flaws. Again, he based his replacement value on a diamond of very good quality, with slight flaws. There was no testimony as to the value range of flawless diamonds to flawed diamonds. Jeweler's estimate was based upon a two-carat, round diamond that was not perfect, but was "pretty close."

Jeweler also testified that synthetic diamonds have been available since at least the 1920s. In the absence of qualified evidence of the diamond's characteristics, the court cannot be certain that the diamond was natural and not synthetic, in that it was given to decedent in the 1930s or 1940s.[3]

Moreover, the record reflects inconsistencies as to the size of the ring. In her testimony, legatee testified that the ring was between two-and-a-half and three carats. Jeweler's estimate, however, was based upon a two-carat diamond. He testified that there is a substantial difference between a two-carat and three-carat diamond.

Jeweler's estimate was made without ever viewing the ring and was based upon a layperson's vague description. Legatee had no specialized knowledge of diamonds that would enable her to provide jeweler

---

3. Legatee was 76 years old during this action and she testified that she knew decedent her entire life. Legatee said that decedent promised her the ring shortly after decedent acquired it. Legatee was 13 years old at the time.

with an accurate description on which to base an estimate. Rather, jeweler's valuation was based upon several assumptions that have no basis in fact—that the diamond was natural and not synthetic, that it was of "G" color and good clarity, and that it was two carats. The money judgment could not have been reasonably determined. *See Brand,* 15 S.W.3d at 407. Testimony based upon assumptions that lack credibility does not amount to substantial evidence.

Legatee argues in her brief that because the court acknowledged jeweler as an expert, and because the uncontradicted testimony of a single qualified witness *may* constitute substantial evidence, that the valuation was sufficient to support the judgment. *See SimulVision Cable Sys. P'ship v. Cont'l Cablevision of St. Louis County, Inc.,* 983 S.W.2d 600, 605 (Mo. App.1999) (emphasis added). Although we acknowledge this authority, we decline to extend it to these facts as the testimony of jeweler did not constitute substantial evidence to support the judgment. Regardless of whether the evidence is contradicted, if the evidence is not substantial, it cannot support a judgment. *See Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). Jeweler's status as an expert is not questioned. His testimony, however, was based upon a layperson's general description and does not constitute substantial evidence that the fair market value of decedent's ring was $20,000.

The $20,000 judgment against the estate was not supported by substantial evidence and is reversed. The judgment is affirmed in all other respects.

SHERRI B. SULLIVAN, C.J., and CLIFFORD H. AHRENS, J. concur.